IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bowen Engineering, Corporation,

    Plaintiff,

vs.                          Case No. 14-1224-JTM

Pacific Indemnity Co., and Scott Process
Systems, Inc.,

    Defendants.

MEMORANDUM AND ORDER

This is a dispute involving a biofuels construction project located in Kansas, owned or operated by two entities, Abengoa Bioenergy Biomass of Kansas, and Abener Teyma Hugoton GP. Plaintiff Bowen Engineering, an Indiana corporation, brought the original breach of contract and unjust enrichment action against defendant Walters Metal Fabrication, an Illinois corporation, seeking sums due in exchange for Bowen's work. It also sued defendants Pacific Indemnity Company and Scott Process Systems, Inc., based on lien surety bonds issued in connection with the project. (Dkt. 1-1). Pacific and Scott removed the action to this court.

Following the removal, Bowen settled its claim against Walters, which was dismissed from the action. In the settlement, Walters agreed to execute a confession of

judgment in the amount of $718,781.92. Further, in addition to a direct payment of $200,000 to Bowen, Walters assigned to Bowen its claims against Scott and Pacific.

Bowen's First Amended Complaint, filed December 9, 2014, advances claims of breach of contract and unjust enrichment against Scott for failing to pay Walters. Bowen also seeks to foreclose on the mechanics lien it filed against the project under K.S.A. 60-1101.

This matter is before the court on the Motion for Judgment on the Pleadings under FED.R.CIV.PR. 12(c), as well as a Motion to Transfer Case, both filed by defendants Pacific and Scott.[1] In the former, the defendants argue that Bowen is not entitled to proceed against the bond filed in Stevens County, Kansas. In the latter, the defendants argue that the case should be transferred to a United States District Court in Missouri[2] in light of the forum selection clause in the underlying Assembly Services Agreement (ASA) between Bowen and Walters. The defendants also note the Supreme Court's recent decision in *Atlantic Marine Construction Co., v. United States Dist. Ct.*, 134 S.Ct. 568 (2013), which altered the rules relating to transfers under 42 U.S.C. § 1404(a), including its determination that a plaintiff's choice of forum is entitled to no weight when it contravenes an otherwise

---

[1] Defendant Walters also moved to transfer the action, but withdrew the motion following the settlement with plaintiff.

[2] The Assembly Services Agreement is silent as to whether disputes should be brought in the *Eastern* or *Western* District of Missouri. The defendants suggest in their motion that, given the proximity of the parties and witnesses to St. Louis, the Eastern District is an appropriate venue. Bowen does not dispute this suggestion in its response.

applicable forum selection clause.

The Amended Complaint filed by Bowen on December 9, 2014, alters the relationship among the parties by removing Walters and adding contract claims agains the defendants,[3] but does not alter the two essential questions presented to the court — whether Bowen is close enough to the project to invoke the lien provision in the state construction fairness act, and, if so, if this requires vitiating the agreement to litigate all disputes in Missouri. The court finds that the answers to both questions is no.

*Motion for Judgment on the Pleadings*

The defendants' Motion to Dismiss is grounded on the limitation on potential claimants to a statutory bond under Kansas law. Such claimants may proceed against the bond only if the claimant could have enforced and perfected a lien. K.S.A. 60-1103(a) provides:

> Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, *under an agreement with the contractor, subcontractor or owner contractor* may obtain a lien for the amount due in the same manner and to the same extent as the original contractor....

(Emphasis added.) The statute does not apply to remote suppliers, such as those that supply labor or materials to sub-subcontractors. *See Wichita Steel Metal Supply Inc. v.*

---

[3] Defendants Motion to Dismiss is directed at Count 2 of the original state court petition (Dkt. 1-1, ¶¶ 37-47), which advanced Bowen's K.S.A. 60-1103 claim for recovery against lien surety bonds in lieu of foreclosure of its mechanic's lien. This claim is repeated verbatim as Count 4 of the Amended Complaint. (Dkt. 1-1, ¶¶ 64-75).

3

*Dahlstrom and Ferrell Construction*, 792 P.2d 1043, 1048 (Kan. 1990); *J.W. Thompson Co. v. Welles Products*, 758 P.2d 738, Syl. ¶¶ 2-4 (Kan. 1988); *BRB Contractors v. Akkerman Equipment*, 935 F.Supp. 1156, 1158-59 (D. Kan. 1996) (suppliers to sub-subcontractors are not afforded statutory protection).

The defendants thus argue, and Bowen does not dispute, that under Kansas law suppliers to second-tier subcontractors or suppliers do not have lien rights.

But the parties differ as to the identity of the parties to the construction contract. Bowen characterizes Scott as the contractor, and suggests Abener Teyma Hugoton GP (one of the parties contracting with Scott) was simply an agent of the owner, and not a true contractor. Thus, Bowen contends, it was a supplier to a subcontractor (Walters), and not a supplier to a sub-subcontractor. (Dkt. 37, at 2).

Bowen acknowledges that Abener held itself out as the contractor, but argues this is not binding on the court. It relies in part on the decision of the Missouri Court of Appeals in *Tharp v. Keeter/Schaefer Investments*, 943 S.W.2d 811 (Mo. Ct. App. 1997) (finding under the facts of the case that a putative general contractor was actually an agent of the owner rather than a true contractor). Bowen further argues that Kansas law implicitly recognizes the concept of an owner's agent in K.S.A. 60-1101, which provides that

> Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner *or with the* trustee, *agent* or spouse *of the owner*, shall have a lien upon the property for the labor, equipment, material or supplies furnished at the site of the property subject to the lien, and for the cost of transporting the same.

4

(Emphasis added). Since K.S.A. 60-1103 does not include such language, Bowen argues, it means such owner's agents are not included.

Paragraph 3 of the state court Petition asserts that "Abener is either the owner of the Biomass Project or is the owner's agent." (Dkt. 1-1, at ¶ 3). In their separate Answers, Scott and Pacific each admitted Paragraph 3. (Dkt. 8, 9 at ¶ 3). But, as defendants note, their Answers cannot be fairly read to indicate that Abener's "*only role* was as the owner's agent." (Dkt. 42, at 4, defendant's emphasis). The defendants proceed to state specifically in their Answers that "Bowen is not entitled to any mechanic's lien under Kansas law *as it contracted with a supplier or sub-subcontractor to a subcontractor for the Project*." (Dkt. 8, 9, at ¶ 41 (emphasis added)). Bowen cites no authority for the proposition that the roles of owner's agent and contractor are exclusive.

The court concludes that even if Abener was an agent of the owner, this would not exclude it from acting as a contractor. K.S.A. 60-1103 explicitly recognizes and defines the concept of an "owner contractor." Whether Abener was an agent or general contractor, § 60-1103 remains applicable, and the lien arises only in favor of the immediate "suppliers and subcontractors" of the owner contractor, Abengoa.

Alternatively, Bowen argues that it is entitled to a mechanics lien based on a special relationship between Abener and Abengoa. For this argument, Bowen relies on this court's decision in *BRB Contractors v. Akkerman Equipment*, 935 F.Supp. 1156, 1158-59 (D. Kan. 1996), which denied summary judgment based upon evidence that a subcontractor and sub-subcontractor were involved in a joint venture.

5

The court finds *BRB Contractors* to be inapposite. The allegation advanced in the complaint in *BRB*, if proved, would have the result that the claimant would advance from third tier to second tier, advancing from sub-subcontractor status to subcontractor. Bowen's argument of a close relationship between Abengoa and Abener would have no such effect here. As noted earlier, even if Abener was an agent of owner Abengoa, or even if those parties were involved in a joint venture, Scott was still a subcontractor of the owner contractor entity, as defined in K.S.A. 60-1103(b), Walters is a sub-subcontractor, and Bowen is third tier claimant.

Bowen also notes that in Scott's Notice of Extension to File Contractor's Lien in Stevens County, Kansas, the defendant identified itself as a "Contractor." But the existence of this Notice was not a part of Bowen's allegations in the Complaint.[4] Further, Scott amended the Notice, specifically identifying Abener as the contractor and itself as subcontractor, on July 14, 2014 – prior to the date that the present action was removed.

Bowen itself acknowledged in its lien statement that Abengoa Bioenergy Biomass was the owner, and Abener Teyma Hugoton General was the project contractor. There is simply no reasonable basis for any conclusion other than that Scott was the first-tier

---

[4] Bowen does allege in its complaint that Scott and Walters were more than suppliers. It alleges that Scott and Walters "perform[ed] work on the [] Project." (Compl. ¶¶ 4-5, Dkt. 1). The defendants counter that the mere performance of some peripheral work does not mean a party is not a supplier. In any event, as the defendants point out, the point is not decisive. Even if the court considers Scott and Walters as subcontractor and sub-subcontractor rather than suppliers, the result is the same: Bowen is simply too distant from the general contract to benefit from the lien statue.

subcontractor on the project. Walters was a second-tier subcontractor. And Bowen, a third-tier subcontractor, is too remote to invoke the protection of the Kansas statute.

**Motion to Transfer**

The Assembly Services Agreement contains an express forum selection claue, under which "the Parties agree to resolve its [sic] dispute in state or federal court in Missouri." Scott and Pacific invoke this clause in support of their Motion to Transfer the action to Missouri.

In responding to the motion, Bowen argues first that the motion is untimely, since under Rule 12(b)(3), a motion to dismiss for improper venue must be made prior to the filing of a responsive pleading. In the present case, Walters filed its Answer prior to the defendants' Motion to Transfer. Second, Bowen argues that Pacific and Scott have no standing to assert the forum selection clause contained in the ASA, which is applicable only to "the Parties" to the ASA. Finally, the plaintiff contends that Kansas is the proper venue for the action, since it is seeking to pursue a mechanics lien against the real estate in Kansas under the Kansas Fairness in Private Construction Act (KFPCA), K.S.A. 16-1801 *et seq.*

The court finds that the defendants are not precluded from seeking a transfer of the action to Missouri. Defendants are not seeking to dismiss the action under Rule 12, or asserting improper venue as a defense to the Complaint, but are asking for transfer of the action to Missouri. Rule 12(b)(3) is inapplicable. "An action may be transferred under § 1404(a) at any time during the pendency of the case, even after judgment has been

7

entered." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991) (citation omitted).

Further, defendants Pacific and Scott are entitled to invoke the forum selection clause as intended beneficiaries of the clause. A nonsignatory party may still invoke such a clause "if [its] relationship [to] the signatory is sufficiently close so that the nonparty's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Magi XXI, Inc. v. Stato Della Ditta Vaticano*, 818 F.Supp.2d 597, 605-606 (citing *In re Optimal U.S. Litigation*, 813 F. Supp. 2d 351, 369 (E.D. N.Y. 2011). With respect to the forum selection clause, both Pacific and Scott are intended beneficiaries of the ASA under Kansas law. *See Noller v. GMC Truck & Coach Div.*, 772 P.2d 271, 275 (Kan. 1989). Here, Bowen's action against Pacific and Scott is predicated on the actions of the signatory Walters, and their invocation of the forum selection clause was entirely foreseeable.

As noted earlier, Bowen contends that the action is properly brought only in Kansas, in light of the KFPCA. K.S.A. 16-1801(b) provides that "[t]he rights and duties prescribed by this act" cannot be altered by contract. The KFPCA otherwise provides (in K.S.A. 16-1806) that "[v]enue of such an action shall be in the county where the real property is located."

The defendants stress that the KFPCA does not explicitly define venue as one of the "rights and duties" which cannot be varied by contract. They also note that some other states with similar construction statutes explicitly provide that out-of-state forum selection

8

clauses are void against public policy. *See, e.g.*, 815 Ill.Comp.Stat. 665/10 ("A provision contained in or executed in connection with a building and construction contract to be performed in Illinois that makes the contract subject to the laws of another state or that requires any litigation, arbitration, or dispute resolution to take place is against public policy. Such a policy is void and unenforceable").

The court finds that it need not directly resolve the issue. The KFCPA does not directly prohibit the use of foreign forum selection clauses, in contrast to other state construction codes. On the other hand, at least one commentator has assumed that the KFCPA broadly limits such selection clauses. *See* C. Burger, "The Fairness in Private Construction Act: Legislative Fairness or Oxymoron?" 75 J.K.B.A. 22, 25-26 (2006) (Act "addresses such issues as attempts to undermine 'substantive' and 'procedural' rights, subrogation, the recovery of attorneys' fees, and venue provisions" and "requires the preservation of all procedural rights ... includ[ing] ... venue (including choice of forum)").

However, even if the statute were so construed, this does not end the matter. This is because "[i]n federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law. Because [q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995) (internal citations and quotations omitted). *See Atlantic Marine*, 134 S.Ct. at 578 ("federal venue provisions ... alone define whether venue exists in a given forum").

9

Forum selection clauses are presumptively valid. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). Such clauses are unenforceable only "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* at 15. Further, federal courts will give effect to a forum selection clause if the state policy against such clauses simply reflects the continued "provincial attitude regarding the fairness of other tribunals." *Id.* at 12. *See Albemarle Corp. v. AstraZeneca UK*, 628 F.3d 643, 652 (4th Cir. 2010) ("contrary to judicial disfavor of forum selection clauses such as that manifested in the South Carolina statute, in federal court, forum selection clauses enjoy a presumption of enforceability").

"Invalidating a forum selection clause because it conflicts with a statutory venue provision ignores the strong countervailing public policy in favor of holding parties to their agreements, which a court in similar circumstances has described as "*the* 'dominant policy in contract cases ... the better to promote commerce.'" *Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F.3d 786, 791-92 (8th Cir. 2006) (emphasis in *Servewell*, and quoting *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir.1994), other citations omitted). *See also Jones v. KP&H, LLC.*, 288 Fed.Appx. 464, 471 (10th Cir. 2008) ("In some instances, they [the parties] may even agree to terms that conflict with statutory requirements, and Kansas courts will give effect to their agreement rather than the statute").

The KFPCA does not preclude the application of the forum selection clause in the ASA. The court is persuaded by the reasoning in cases such as *Albemarle* and

10

*Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co.*, No. JFM-13-348, 2013 WL 3177881 (D.Md. 2013). In the latter, the court concluded that a Pennsylvania law barring the application of forum selection clauses did not override such an agreement.

> Westchester's invocation of Pennsylvania law, however, begs the question of the proper law to be applied in determining the enforceability of the forum-selection clause. Enforcement of a forum-selection clause in a diversity action such as this is a procedural matter determined under federal rather than state law. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir.2010). State statutes that expressly prohibit certain forum-selection clauses ordinarily are preempted by federal laws and procedures governing venue in federal courts. *Id.* Federal law recognizes forum-selection provisions to be prima facie valid and requires such provisions to be enforced unless the party opposing the provision establishes that enforcement of the forum-selection clause would be unreasonable. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Enforcement may be found unreasonable if, inter alia, application of the forum-selection clause would contravene a strong public policy of the forum state. *Albemarle Corp.*, 628 F.3d at 651–52 (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.1996)).
>
> The court therefore must consider whether Pennsylvania's avowed disapproval of out-of-state forum-selection clauses in construction contracts is a "strong public policy of the forum state" and, if so, whether federal courts should defer to that policy. For at least three reasons, deference here would be inappropriate. First, Pennsylvania is not the forum state. Although the public policy of Pennsylvania might warrant consideration because the construction project occurred there, Whiting-Turner is a Maryland corporation and filed this action in Maryland rather than Pennsylvania. Second, deference to Pennsylvania statutes governing the enforceability of forum-selection clauses would contravene the express terms of the subcontract between Ionadi Corp. and Whiting–Turner. That contract provides: "This Subcontract shall be governed by the laws of the State of Maryland, without regard to principles of conflict of laws." (ECF No. 1–1 at 9.) That provision, like the forum-selection provision, was incorporated by reference into the performance and payment bonds, and the parties therefore agreed that Maryland rather than Pennsylvania law would govern all disputes related to those bonds. This court, sitting in diversity, must look to Maryland law to determine whether that choice-of-law provision is

enforceable, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and under Maryland law "it is generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract," *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 336 Md. 606, 650 A.2d 246, 248 (Md.1994) (internal quotation marks omitted). This court therefore must give effect to that choice-of-law provision and apply Maryland rather than Pennsylvania law. Enforcement of a Pennsylvania statute prohibiting out-of-state forum-selection clauses would flout the intent of the parties as expressed in the contract.

Third, even if Pennsylvania laws were applicable, its prohibition of out-of-state forum-selection clauses in construction contracts is not a "strong public policy" that warrants federal deference. The Fourth Circuit addressed an analogous question in *Albemarle Corp. v. AstraZeneca UK Ltd.* and concluded that a South Carolina statute barring enforcement of forum-selection clauses did not represent a "strong public policy" of that state and should not be permitted to override the Supreme Court's embrace of such clauses in *M/S Bremen* and its progeny. 628 F.3d at 652; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Burlington N.R. Co. v. Woods*, 480 U.S. 1, 7, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987)). That same reasoning is equally applicable here. Pennsylvania courts routinely enforce forum-selection clauses requiring litigation in its state courts, including in cases involving construction contracts. *See, e.g., Patriot Commercial Leasing Co. v. Kremer Rest. Enters., LLC*, 915 A.2d 647, 650–51 (Pa.Super.Ct.2006) (citing *Cent. Contracting Co. v. C.E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (Pa.1965)). Pennsylvania thus cannot be said to have a strong public policy against the enforcement of forum-selection clauses. And insofar as Pennsylvania only bars the enforcement of forum-selection clauses that preclude venue in Pennsylvania courts, that policy reflects a "provincial attitude regarding the fairness of other tribunals"—an attitude that the Supreme Court rejected in *M/S Bremen*. *See* 407 U.S. at 12. Pennsylvania's prohibition of out-of-state forum-selection clauses in construction contracts therefore cannot trump the strong federal policy favoring the enforcement of those provisions.

2013 WL 3177881 at *3-4.

These considerations are present in this action as well. None of the parties are Kansas citizens. The parties to the ASA freely and voluntarily agreed to litigate all matters

in Missouri. As noted earlier, the defendants are entitled to assert the forum selection clause as intended beneficiaries of the agreement. And Kansas courts routinely enforce forum selection clauses in other cases, recognizing that "a mandatory forum selection clause may be enforced if it bears a reasonable relationship to the transaction." *Packard v. Credit Solutions of America*, 42 Kan.App.2d 382, 387, 213 P.3d 437, 441 (2009). *See also Vanier v. Ponsoldt*, 251 Kan. 88, 99-100, 833 P.3d 949 (1992) (quoting *The Bremen* (407 U.S. at 13) as to the "compelling reason" for giving such clauses "full effect," and enforcing agreement as to Kansas venue, in case involving sale of an Arabian horse located in Kentucky).

Similarly, in *Brahma Group, Inc. v. Behham Constructors*, 08-970TS, 2009 WL 1065419 (D. Utah. 2009) the court upheld application of a foreign selection clause in a contract which specified the use of Texas law, even though Utah law provided that such clauses were "void and unenforceable against the public policy of this state." U.C.A. 1953 § 13-8-3(2). The court observed:

> As a preliminary matter, it does not appear that protecting Utah residents from lawsuits filed in another jurisdiction and providing a forum for Utah residents' legal disputes are sufficient to qualify as "strong" public policies against abiding by the express wishes of the parties and enforcing the forum selection clause. Every state has a motivation to provide a forum for its residents, but the requirement of a "strong" public policy must require more than a state's understandable desire to provide a judicial haven for businesses domiciled in the state. In *M/S Bremen, GmBH*, the United States Supreme Court stated that "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our court." While the Supreme Court was expressly referencing international trade, the principles are just as applicable to trade between the states. The temptation to give in to parochial interests is what motivated the Framers of the United States Constitution to remove from the states control

over interstate and international commerce.

*Id.* at *4 (footnotes omitted). Utah's statutory scheme as to construction contracts was not definitive, the court observing that under *The Bremen*, "the state of Utah does not get to define its own public policy as 'strong.'" *Id.* at *4 n. 15.

Alternatively, the court found the Utah statute precluding forum selection clauses was procedural in nature, and thus not one which the court was bound to apply. In reaching this conclusion, the court stressed that under Tenth Circuit precedent such clauses are favored under federal law.

> Because conflicts of law are inevitable in a federal system, parties to a contract are empowered to and frequently do choose a particular state's law to apply to the execution and interpretation of the contract. Absent special circumstances, courts usually honor the parties' choice of law because two "prime objectives" of contract law are "to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."

*Id.* at 5 (quoting *Boyd Rosene & Assoc's v. Kansas Municipal Gas Agency*, 174 F.3d 1115, 1121 (10th Cir.1999) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 comment e). The court further noted the Tenth Circuit's quotation of *The Bremen* (407 U.S. at 12) in *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 429 (10th Cir.2006) — "The choice of forum was made in an arms-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts."[5]

---

[5] Other courts have reached different conclusions, but generally without extended discussion. *See Gem MechanicalServ. v. DV II, LLC.* 2012 WL 2312095, *2 (D.R.I. 2012) (declining to enforce forum selection clause, given the "strong public policy ... set

14

To summarize, the court finds that Bowen is too remote a supplier to invoke the protection of K.S.A. 60-1103, as set forth in Count 4 of the Amended Complaint. Moreover, Bowen's claims are properly subject to the forum selection clause in the Assembly Services Agreement, and the court transfers these claims to the United States Court for the Eastern District of Missouri.

IT IS ACCORDINGLY ORDERED this 5th day of January, 2015, that the defendants' Motions to Dismiss (Dkt. 29) and Transfer (Dkt. 27) are granted, as provided herein.

 s/ J. Thomas Marten

J. THOMAS MARTEN, JUDGE

---

forth in Rhode Island General Laws § 6-34.1-1, which provides that forum selection clauses in construction contracts, where construction is located in Rhode Island, are voidable by the party obligated by the contract to perform the construction or repair"); *Neon Contruction Enterp. v. International Bonding*, 2012 WL 3111748, *2 (V.I.Super. 2012) (finding "very clear policy dictating that forum selection clauses and choice-of-law clauses cannot be enforced when the subject matter of an insurance contract is in the Virgin Islands"); *E. Cornell Malone Corp. v. Sisters of the Holy Family*, 2012 WL 1886055 (E.D. La.,2012) (refusing to enforce clause "because the construction project is located within Louisiana ... against the public policy of Louisiana, under both the Louisiana statute and by application of [*The Bremen*] regarding a forum selection clause in contravention of public policy"). *See also United States v. TigPro, Inc.*, 2007 WL 1894154, *9-10 (S.D. Tex. 2007) (finding Texas statute making forum selection clauses voidable was not binding as an expression of public policy, since construction occurred in New Hampshire).